UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WAYNE J. OELZEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06CV1734 TIA |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

### **Statement of Facts**

"[V]iewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn",[1] the Court sets for the following facts:

Plaintiff Wayne Oelzen is the surviving spouse of Deanna Oelzen ("Decedent"). On February 4, 2000, Decedent suffered a brain stem stroke paralyzing her from the neck down and became wheelchair bound as a result. (Complaint, ¶ 8; Pl. Exh. 1, Oelzen Depo., p. 14, lns. 10-11) On March 14, 2005, Plaintiff, the Decedent's sister, Mary Ann Herbert, and the Decedent's brother-in-law, Richard Herbert, transported Decedent to the East Terminal of Lambert-St. Louis International Airport ("STL"). (Complaint, ¶ 7; Pl. Exh. 1, pp. 35-36) When traveling out of the home, Decedent used a wheelchair equipped with both waist and chest restraints. (Def. Exh. A, Oelzen Depo., p. 17, lns. 2-8; Def. Exh. E) Plaintiff fastened both belts when he placed Decedent in her chair. (Pl. Exh.

---

[1] Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 867-68 (8th Cir. 2008).

1, pp. 112-113, lns. 16-1) Decedent remained in her wheel chair through the entire drive. (Pl. Exh. 1, p. 36, lns. 18-19; Def. Exh. A, p. 38, lns. 3-8) Plaintiff and the Herberts used 52-inch aluminum ramps to roll Decedent in and out of the van. (Pl. Exh. 1, pp. 36, lns. 23-25)

Upon arrival at the East Terminal of STL on March 14, 2005, Decedent entered the screening lanes of the security check point. (Complaint, ¶ 7) Although not a passenger on the flight, security officers gave permission to Ms. Herbert to go through the security checkpoint in order to assist Plaintiff with boarding. (Pl. Exh. 1, p. 51, lns. 3-10) Decedent did not proceed through the metal detector; instead, Ms. Herbert delivered Decedent to a security officer for an individual screening. (Pl. Exh. 2, p. 36, lns. 10-13) Transportation Security Officer Jaime Bergheger ("TSO Bergheger") then wheeled Decedent to the right and proceeded to screen her. (Pl. Exh. B, Herbert Depo., p. 43, lns. 3-12; Pl. Exh. C, Bergheger Depo., p. 33, lns. 20-25)

During the screening process, TSO Bergheger noticed a fastened waist belt but not a chest belt. (Pl. Exh. 3, p. 33, lns. 4-16) She claimed that she did not undo the strap because she did not want the Decedent to fall out and get hurt. (Pl. Exh. 3, p. 29, lns. 1-3) However, Plaintiff and Ms. Herbert could not and did not participate in the screening. (Pl. Exh. 3, p. 34, lns. 17-25) Although TSO Bergheger maintained that Plaintiff and Ms. Herbert were present and watched during the screening procedure, both Plaintiff and Ms. Herbert claimed that TSO Bergheger wheeled the Decedent out of their sight for 3 to 5 minutes. (Pl. Exh. 1, p. 65, lns. 1-25; Pl. Exh. 2, p. 32, lns. 1-14) Furthermore, Plaintiff contended that TSO Bergheger had nearly completed the screening when Plaintiff arrived to the area TSO Bergheger had taken the Decedent. (Pl. Exh. 1, p. 63, lns. 7-13, p. 68, lns. 12-20) After the screening procedure, Plaintiff put Decedent's shoes on her and proceeded

2

to the console area to request handicap assistance and then to the gate. (Pl. Exh. 1, p. 63, lns. 11-13, p. 74, lns. 9-14, pp. 76-77, lns. 25-19)

While Plaintiff wheeled the Decedent through the jetway, something caused the chair to stop suddenly, and the Decedent fell forward onto the floor, hitting her head. (Pl. Exh. 1, pp. 82-83, lns. 18-12, p. 84, lns. 4-8) At some point, the belt(s) became unfastened, which allowed Plaintiff to fall out of the wheelchair. (Pl. Exh. 1, p. 70, lns. 10-17, pp. 112-113, lns. 22-3) Although the Decedent briefly lost consciousness, she waived her right to medical treatment and proceeded with her travel plans. (Pl. Exh. 2, p. 63, lns. 16-24, p. 75, lns. 15-24; Pl. Exh. 1, p. 107, lns. 16-23)

Shortly after landing in Baltimore, Maryland, the Decedent felt ill and began to lose consciousness. Emergency Room physicians diagnosed a large subdural hematoma. (Complaint, ¶ 18) On March 15, 2005, the Decedent died as a result of the subdural hematoma sustained during her fall on the jetway. (Complaint, ¶ 19; Pl. Exh. 4, Mitchell Depo., p. 17, lns, 7-21, p. 18, lns. 1-11)

On December 5, 2006, Plaintiff filed a Wrongful Death Complaint in federal court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* Plaintiff instituted the claim as the Decedent's lawful husband under the Missouri Wrongful Death Statute, Mo. Rev. Stat. § 537.080. (Complaint, ¶ 4) Plaintiff alleged that the death of his wife, Deanna Oelzen, was caused by the negligent and wrongful acts or omissions of employees of the United States Government while acting in the course and scope of their employment. (Complaint, ¶ 2) Specifically, Plaintiff alleged negligence against employees of the Transportation Security Administration ("TSA"), a component of the Department of Homeland Security. (Complaint, ¶ 5) Plaintiff claimed that as a direct and proximate result of the Decedent's wrongful death, Plaintiff sustained damages including pecuniary losses, funeral

expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support. (Complaint, ¶ 26)

On November 26, 2007, Defendant filed a Motion for Summary Judgment, alleging that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter of law. Specifically, Defendant asserted that Plaintiff failed to meet the criteria for establishing a breach of duty to protect and a causal connection between the alleged negligent act and the injury and death of Decedent. Plaintiff replied, arguing that material facts are in dispute which would preclude summary judgment.

**Standard for Ruling on Summary Judgment**

A party moving for summary judgment is entitled to such judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008). The court must view "the evidence in the light most favorable to the nonmoving party and [give] that party the benefit of all inferences that may reasonably be drawn." Buboltz, 523 F.3d at 867-68. The United States Supreme Court has noted that, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The initial burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v.

4

Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2).

**Discussion**

After thorough review of the Motion for Summary Judgment and responses thereto, along with the supporting evidence, the undersigned finds that genuine issues of material fact exist such that summary judgment is not warranted. Instead, this case should proceed to a bench trial, with an advisory jury to aid the court in its determination. Because the act or omission occurred in Missouri, the Court will apply Missouri substantive law to Plaintiff's negligence claim. 28 U.S.C. § 1346(b).

Plaintiff alleges that the employees of Defendant were negligent in performing the Decedent's screening at Lambert-St. Louis International Airport, thus causing Decedent to fall from her wheelchair, strike her head, and sustain a subdural hematoma which lead to her death. Under Missouri law, to succeed on a wrongful death claim under a negligence theory, a plaintiff must establish: "(1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of [her] death; and (4) as a result of the breach, plaintiff suffered damages." Heffernan v. Reinhold, 73 S.W.3d 659, 665 (Mo. Ct. App. 2002) (citation omitted); see also Abney v. City of Park Hills, Missouri, No. 4:06CV1258-DJS, 2007 WL 2955578 at *5 (E.D. Mo. Oct. 5, 2007).

5

The Defendant does not dispute that TSO Bergheger had a duty to protect Decedent from injury. However, Defendant does dispute the Plaintiff's allegation that TSO Bergheger breached this duty. Review of the facts and evidence in this case reveals a credibility issue. While TSO Bergheger claims that she never unbuckled the fastened belt, Plaintiff and Ms. Herbert maintain that Decedent was secured in her wheelchair and that neither of them unbuckled the belt. "Which account of the facts is true will undoubtedly boil down to the credibility of the witnesses."[2] Farmers Co-op. C. v. Senske & Sons Transfer Co., No. 2:06-cv-32, 2008 WL 686266 at *3 (D.N.D. March 7, 2008). Further, the Court must give Plaintiff the benefit of all inferences that may reasonably be drawn from the evidence submitted. As such, the Plaintiff has submitted adequate evidence to create a question of fact for trial on the Defendant's alleged breach of a duty of care to the Decedent.[3]

Defendant also argues that Plaintiff cannot establish a causal connection between any action or inaction of Defendant and the Decedent's fall, injury, and subsequent death. "In order to prove the causal connection necessary to establish negligence, the plaintiff must show both causation in fact and proximate cause." Heffernan, 73 S.W.3d at 664 (citations omitted). Cause in fact requires the plaintiff to show that the injuries would not have occurred "but for" defendant's conduct. Id. In other words, Plaintiff must prove that, but for some act or omission by Defendant, the Decedent would not have died. Brown v. Bailey, 210 S.W.3d 397, 407 (Mo. Ct. App. 2006). "The test of proximate cause is

---

[2] While the undersigned is the trier of fact in this case, such credibility determinations are improper at this juncture. Instead, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[3] Defendant argues that the Decedent's alleged statements to her sister after the her fall is inadmissable as hearsay. While the undersigned appreciates Defendant's position, this argument is better suited for a motion in limine prior to trial.

6

whether the defendant's negligence is the cause or act of which the injury was the natural and probable consequence." Heffernan, 73 S.W.3d at 664 (citation omitted). Whether proximate cause exists is usually a question for the finder of fact. Id. at 665.

Again, this issue boils down to credibility. TSO Bergheger asserts that she never unfastened the belt. Plaintiff and Ms. Herbert contend that the Decedent was secured by the belt(s) prior to the screening process and that they never unbuckled the belt. TSO Bergheger acknowledged that she knew a that a person in a wheelchair could fall out and get hurt without the strap fastened. A genuine issue of material fact exists as to whether the Decedent would have fallen out of the chair, hit her head, and died "but for" the TSA's unfastening and failure to re-fasten the seat belt(s). Therefore, the undersigned finds that summary judgment is not warranted in this case and that Plaintiff is entitled to a bench trial with an advisory jury.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. #13] is **DENIED.**

**IT IS FURTHER ORDERED** that the Parties shall notify the Court in writing within ten (10) days whether ADR would be beneficial at this point.

                                                       /s/ Terry I. Adelman
                                              UNITED STATES MAGISTRATE JUDGE

Dated this   16th   day of July, 2008.